**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **DANIEL ORTEGA, #02146868** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  4:20cv942** |
| | § | |
| **DIRECTOR, TDCJ-CID** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

*Pro Se* Petitioner Daniel Ortega, an inmate confined in the Texas prison system, filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United

States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of law, and

recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended

Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate

Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Collin County convictions, Cause No. 199-82017-2016. On

June 7, 2017, a jury found Petitioner guilty of continuous sexual abuse of a child under fourteen

and indecency with a child by sexual contact. (Dkt. #13-22, pp. 28-33). The trial court assessed

punishment at forty-one years' confinement on the continuous sexual assault conviction and

twenty years' confinement on the indecency conviction. (Dkt. #13-22, pp. 28-29, 31-32).

Petitioner appealed his convictions, which were affirmed on July 6, 2018. *Ortega v. State*,

No. 05-17-00810-CR, 2018 WL 3322893 (Tex. App. July 6, 2018) (Dkt. ##13-3, 13-4). Petitioner

filed a petition for discretionary review ("PDR") (Dkt. #13-7), which the Texas Court of Criminal

Appeals ("TCCA") refused on December 19, 2018. *Ortega v. State*, PDR No. 0761-18.

1

Petitioner filed an application for state habeas corpus relief on December 13, 2019. (Dkt. #13-22, pp. 54-73). On June 24, 2020, the state habeas court entered findings of fact and recommended Petitioner's application be denied. (Dkt. #13-22, pp. 123-31). On or about July 21, 2020, Petitioner filed a supplemental application in the state habeas court. (Dkt. #13-21). On September 16, 2020, the TCCA denied the application without a written order on the findings of the state habeas court without a hearing and on the court's independent review of the record. (Dkt. #13-18).

Petitioner filed the instant petition (Dkt. #1) on December 2, 2020.[1] Petitioner asserts the following claims for relief:

(1)     Petitioner was convicted under a statute that is facially unconstitutional.

(2)     Trial counsel provided ineffective assistance by failing to object to an improperly impaneled petit juror.

(3)     Trial counsel provided ineffective assistance by failing to object to the admission of Petitioner's involuntary statement.

(4)     Trial counsel provided ineffective assistance by failing to object to testimony regarding a police report that was not given by the author of the report.

(5)     Trial counsel provided ineffective assistance by failing to investigate.

(Dkt. #1, pp. 6-10; Dkt. #1-1, pp. 8-18). The Director filed a response, arguing Ground One and Ground Two are unexhausted and procedurally barred and the remaining claims are without merit. (Dkt. #12). Petitioner filed a reply. (Dkt. #14).[2]

---

[1] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on December 2, 2020. (Dkt. #1, p. 13).

[2] Thereafter, Petitioner filed a Motion for Leave to File Supplemental Pleading (Dkt. #17), along with an amended petition (Dkt. #18), seeking to add eight new claims. On September 14, 2022, the Court denied Petitioner's Motion for Leave to File Supplemental Pleading. (Dkt. #24). On April 15, 2023, the Court denied Petitioner's motions for

## II.  FACTUAL BACKGROUND

The Fifth District Court of Appeals set out a brief recitation of the facts as follows:

At trial, appellant's stepsister A.C. testified appellant began abusing her when she was nine. At the beginning, the abuse occurred "once every week, two weeks," but then "it started getting two to three times every week." The abuse continued until A.C. was "about to turn thirteen." A.C. told her mother what had happened when A.C. "had gotten to the point where [she] wasn't sleeping and [she] was having panic attacks every day at school."

*Ortega*, No. 05-17-00810-CR.

## III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the

---

reconsideration (Dkt. ##27, 28) of the Court's Order (Dkt. #24) denying his motion for leave to file a supplemental pleading and ordered Petitioner's amended petition be struck. (Dkt. #29).

holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA, as in the present case, is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472. Where the decision is a summary denial or affirmance, however, a "federal [habeas] court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."[3] *Wilson v. Sellers*, 584 U.S. ___, ___, 138 S. Ct. 1188, 1192 (2018).

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to

---

[3] The Director may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Sellers*, 584 U.S. at ___, 138 S. Ct. at 1192; *Wesson v. Dir., TDCJ-CID*, No. 1:19-CV-00187-H, 2022 WL 3928513, at *3 (N.D. Tex. Aug. 30, 2022), *appeal dismissed sub nom. Wesson v. Lumpkin*, No. 22-10990, 2023 WL 2881423 (5th Cir. Mar. 10, 2023).

be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original).

Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV.  ANALYSIS

### A.  Exhaustion and Procedural Default (Ground One and Ground Two)

The Director argues Ground One and Ground Two are unexhausted and procedurally barred from federal habeas review. (Dkt. #12, pp. 9-14). The Director states although these claims were raised in Petitioner's supplemental state habeas application, the supplemental application was filed after the state habeas court made its Findings of Fact and Recommendation and forwarded those findings to the TCCA. As a result, the Director argues these claims were not fairly presented to the TCCA and were Petitioner to return to state court to exhaust these claims, his habeas

application would be dismissed as successive. As a result, the Director urges the Court to conclude Ground One and Ground Two are procedurally barred from federal review.

The record shows the following. On June 24, 2020, the state habeas court entered its Findings of Fact and Recommendation on Petitioner's original state habeas application and ordered the Clerk of Court to send a copy of the order to the TCCA. (Dkt. #13-22, p. 131). The original application was received by the TCAA on June 30, 2020. *In Re: Daniel Ortega*, WR-91,398-01. While the original application remained pending in the TCCA, Petitioner filed a supplemental application in the state habeas court. (Dkt. #13-21). The supplemental state habeas court clerk records were received by, and presented to, the TCCA on July 14, 2020, and August 13, 2020. *In Re: Daniel Ortega*, WR-91,398-01**.** On September 16, 2020, the TCCA denied the application without a written order on the findings of the state habeas court without a hearing and on the court's independent review of the record. (Dkt. #13-18).

Before seeking review in federal court, a habeas petitioner must first present his claims in state court and exhaust all available state court remedies through a proper adjudication on the merits. *See* 28 U.S.C. § 2254(b)(1)(A) (federal habeas relief may not be granted unless it appears applicant exhausted remedies available in the state courts). The exhaustion requirement is satisfied if the substance of the federal habeas claim was presented to the highest state court in a procedurally proper manner. *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002). In Texas, the § 2254 exhaustion requirement is satisfied if the substance of the claim was presented to the TCCA in a procedurally proper manner either through a PDR or through an application for writ of habeas corpus. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).

The TCCA has held "the plain language in Article 11.07 permits this Court's consideration of amended or supplemental claims filed by an applicant before final disposition of an application." *Ex parte Saenz*, 491 S.W.3d 819, 825 (Tex. Crim. App. 2016); *see also Green v. State*, 374 S.W.3d 434, 453 (Tex. Crim. App. 2012) (Price, J., concurring) (observing it has "long been the Court's established practice" to entertain amended or supplemental pleadings to an initial 11.07 habeas application that remains pending at the time of the supplemental pleadings; the TCCA "*typically consider[s] whatever matters continue to be forwarded to us from the convicting court right up to the point at which we finally rule on the habeas corpus application*") (emphasis added).

Here, Petitioner filed a supplemental application while his original application was still pending in the TCCA. According to the TCCA, this supplementation was permissible because the TCCA did not finally rule on Petitioner's state habeas application until September 16, 2020, when it denied Petitioner's application on the findings of the state habeas court without a hearing and on the court's independent review of the record (Dkt. #13-18). Accordingly, the Court concludes Ground One and Ground Two are exhausted and ripe for federal habeas review. *See Gardner v. Lumpkin*, No. W-20-CV-772-ADA, 2021 WL 9314945, at *15-16 (W.D. Tex. Aug. 12, 2021), *certificate of appealability denied*, No. 21-50846, 2022 WL 3538273 (5th Cir. Apr. 22, 2022), *cert. denied*, 143 S. Ct. 357, 214 L. Ed. 2d 173 (2022).

**B.  Constitutional Challenge to Section 21.02(d) of the Texas Penal Code (Ground One)**

In Ground One, Petitioner contends he was convicted under a statute that is facially unconstitutional. (Dkt. #1, pp. 6, 7). Specifically, Petitioner argues section 21.02(d) of the Texas Penal Code is unconstitutional because it does not require jury unanimity on which specific acts of sexual abuse were committed by a defendant. (Dkt. #1, p. 7).

The Sixth Amendment requires a unanimous jury verdict as to all the essential elements in criminal cases. *Ramos v. Louisiana*, 590 U.S. ___, ___, 140 S. Ct. 1390, 1397 (2020). Under the plain language of section 21.02, it is the commission of two or more acts of sexual abuse over a period of more than thirty days that is the element that requires jury unanimity. *See Jacobsen v. State*, 325 S.W.3d 733, 737 (Tex. App. 2010). "The individual acts of sexual abuse that make up this pattern of behavior or series of acts are not themselves elements of the offense, but are merely evidentiary facts, the manner and means by which the actus reus element is committed." *Id.* The "jury need not even be unanimous with respect to which predicate offenses were committed, or when they were committed; they need only agree that at least two such offenses were committed over a greater-than-thirty-day period." *Ramos v. State*, 636 S.W.3d 646, 656-57 (Tex. Crim. App. 2021), *reh'g denied* (Jan. 26, 2022). Thus, section 21.02(d) of the Texas Penal Code does not violate a defendant's constitutional right to a unanimous jury verdict. Petitioner has not presented any clearly established Supreme Court precedent that holds to the contrary. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, habeas relief is not warranted on Ground One. *See Mumphord v. Lumpkin*, No. 4:22-CV-1446, 2023 WL 6444887, at *10 (S.D. Tex. Sept. 29, 2023).

## C. <u>Ineffective Assistance of Counsel Claims (Grounds Two-Five)</u>

Petitioner's remaining habeas claims all concern allegations of ineffective assistance of counsel. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).

*Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show counsel's performance was deficient. *Id.* To establish deficient performance, he must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing *pro se* pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of

ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *see also Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

### 1. Failure to Object (Grounds Two-Four)

Petitioner asserts trial counsel was ineffective for failing to object in several instances. A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012) ("[C]ounsel is not required to make futile motions or objections." (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Green*, 160 F.3d at 1037 (failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness); *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Even with a sound basis, however, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting a failure to object may be a matter of trial strategy as to which courts will not second guess counsel). Furthermore, a determination of ineffectiveness depends on whether an objection would have been sustained had it been made. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987).

### a. Failure to object to an improperly impaneled petit juror (Ground Two)

In Ground Two, Petitioner asserts trial counsel provided ineffective assistance by failing to object to an improperly impaneled petit juror. (Dkt. #1, pp. 6, 7). Specifically, Petitioner alleges alternate juror N.D. was improperly impaneled to replace juror S.K. (Dkt. #1, p. 7). The record contradicts Petitioner's allegation. The trial transcripts reflect the trial court seated N.D. on the

petit jury (Dkt. #13-8, p. 37) and selected S.K. as the alternate (Dkt. #13-8, p. 36; Dkt. #13-10, p. 167). Thus, any objection on the basis of an improperly impaneled petit juror would have been meritless. Trial counsel is not ineffective for failing to make a meritless objection. *See Emery*, 139 F.3d at 198; *Clark*, 19 F.3d at 966. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, habeas relief is not warranted on Ground Two.

### b. Failure to object to Petitioner's involuntary statement (Ground Three)

In Ground Three, Petitioner contends trial counsel provided ineffective assistance by failing to object to the admission of Petitioner's involuntary statement made during a polygraph examination. (Dkt. #1, pp. 8, 9).

Upon the victim's outcry, the victim's mother called Petitioner and told him the victim had disclosed his sexual abuse and she was coming to Dallas and bringing "the law" with her. (Dkt. #13-9, pp. 44-46). After being accused of sexual abuse by the victim's mother, but before he was arrested, Petitioner hired Michael D. Park to conduct a polygraph examination. (Dkt. #13-8, p. 13).[4] During the polygraph examination, Petitioner "made an admission." (Dkt. #13-8, p. 13). Petitioner "failed that polygraph" and "then went to a second polygrapher within a matter of weeks," "[t]ook a second polygraph, passed it." (Dkt. #13-8, p. 13). The second polygraph examiner "questioned the tactics and strategies that were used by the first polygrapher [Park]." (Dkt. #13-8, p. 13). As summarized by the Fifth District Court of Appeals, the trial court addressed the issue of the admissibility of Petitioner's statements to Park as follows:

> The trial judge confirmed that appellant took the polygraph test voluntarily in an effort to show he had not committed the crime before he was arrested, the State had no involvement in selecting the polygraph examiner, the polygraph examiner was

---

[4] The information regarding the polygraph examinations were elicited in a hearing outside the presence of the jury before trial. (Dkt. #13-8, pp. 4-18).

not associated with any law enforcement agency or State agencies when he performed the polygraph, and polygraph results were not admissible for any purpose. Appellant's counsel made a Rule 403 objection and argued that admission of appellant's statements to Park would confuse the issues before the jury because the jury would not have the context of the statements being made to a polygraph examiner. Appellant's counsel also objected that he would not be able to effectively cross-examine Park because he would not be able to mention the polygraph. The trial court ruled that the statements appellant made "while he was not hooked up to a polygraph machine" were admissible, but the trial court ordered any polygraph results to be redacted and ordered the parties to tell their witnesses not to say the word "polygraph" or "lie detector" or allude to the fact that there was a polygraph.

*Ortega*, No. 05-17-00810-CR, 2018 WL 3322893, at *1 (Dkt. #13-3, p. 2).

In accordance with the trial court's instructions, Park testified before the jury without disclosing he was a polygraph examiner, that he administered a polygraph examination, or the results of that examination. (Dkt. #13-9, pp. 134-52). Instead, Park testified he "evaluate[d]" Petitioner, and during the evaluation, Petitioner made "an admission." (Dkt. #13-9, pp. 134, 137-38). Trial counsel renewed his objections to that line of questioning "on 403 grounds, confrontation grounds, and due process grounds," which the trial court overruled. (Dkt. #13-9, p. 138). The Fifth District Court summarized Park's testimony before the jury as follows:

With the jury present, Park testified he "started off as a police officer" and was recruited by the U.S. Marshals. Park was in military counterintelligence and was a fugitive investigation supervisor for the U.S. Marshals and an inspector in the federal witness protection program. Park testified he retired in 2002 and "just became an entrepreneur." Park testified appellant came to Park's office, and appellant told Park that he had lived in a house with his stepsister, A.C., and "from the time she was about ten years old, she allege[d] that he had sex with her and that he touched her." Appellant denied that any abuse occurred and said A.C. "got caught sneaking out of the house and she was on drugs and she blames all her acting out behavior on [appellant] for molesting her." Park continued the conversation with appellant, and appellant "said he accidentally touched her and his fingers went into her vagina while they were roughhousing." Park asked appellant to draw his hand on a piece of paper and to "[d]raw a line, however much or however little, that [appellant] placed [his] finger in A.C.'s vagina." Appellant drew his hand and a line across a finger and said, "The only thing I can say is not sexual, just horseplay. She was always all over me." . . . .

*Id.* (Dkt. #13-3, pp. 2-3).[5] Park testified the writing describing what the drawing depicted was "in [his] handwriting"; he dated the drawing; and Petitioner initialed the drawing. (Dkt. #13-9, pp. 141-46). The drawing and Park's handwritten note regarding what the drawing depicted were entered into evidence. (Dkt. #13-11, p. 11); *see also Ortega*, No. 05-17-00810-CR, 2018 WL 3322893, at *1 (Dkt. #13-3, p. 3).

In an attempt to impeach Park's credibility, trial counsel introduced the testimony of A.D. Skip Ensley. Before Ensley testified before the jury, Ensley testified in a hearing outside the presence of the jury. (Dkt. #13-10, pp. 68-78). As summarized by the Fifth District Court of Appeals, Ensley testified outside the presence of the jury as follows:

> Park is "not trusted in the [polygraph] community." Ensley testified there were "several complaints filed against" Park, Park's "method of how he conducts his exams is always under question," and Park has a reputation for being deceitful. In response to questioning from the prosecutor, Ensley testified he had never worked with Park, Ensley had "no idea" whether any of the complaints against Park had been sustained, and his opinion about Park being deceitful was based on what other people had told him. In response to questioning, Ensley testified that licensed polygraph examiners were required to report anyone who admitted that they committed a sexual assault. At the conclusion of the hearing, the trial judge ruled that Ensley could testify regarding Park's reputation for truthfulness and honesty and regarding whether it is standard practice in his occupation to make audio and video recordings.

*Ortega*, No. 05-17-00810-CR, 2018 WL 3322893, at *2 (Dkt. #13-3, pp. 3-4).

---

[5] Park's specific testimony is as follows:

> Q.    Okay. And to be clear, did you have him trace his hand before or after he had already said that his fingers had gone into her vagina?
> A.    After.
> Q.    So he says, My fingers accidently went into her vagina. And you said, okay. Trace your hand and show me how far. Is that accurate?
> A.    Accurate.
> Q.    After he traced the hand and drew the line showing how far he had inserted his finger into her vagina, did he give a further explanation?
> A.    He did.
> Q.    What did he say?
> A.    He said, The only thing I can say is not sexual, just horseplay. She was always all over me.

(Dkt. #13-9, p. 139).

In accordance with the trial court's instructions, Park testified before the jury as follows:

> Ensley testified he was part of the same community as Park, and Park's reputation for truthfulness in the community was "very questionable." Ensley also confirmed that, in the community, members were "supposed to audio or video record the evaluations" they performed. On cross-examination, Ensley was asked if his knowledge of this case was "pretty limited," and Ensley answered, "To some degree. Yes." . . . .

*Ortega*, No. 05-17-00810-CR, 2018 WL 3322893, at *2 (Dkt. #13-3, p. 4).

On direct appeal, Petitioner argued the trial court erred in admitting evidence of his purported voluntary admission of guilt made during the polygraph examination with Park. The Fifth District Court of Appeals addressed the issue in relevant part as follows:

> In his first issue, appellant argues the trial court erred by admitting evidence of a purported voluntary admission of guilt made by appellant during a polygraph examination. Specifically, appellant argues statements made during polygraph tests or during pre- or post-test interviews are admissible only "when the statement is recorded or not disputed (reliable), when the statement is not otherwise excluded by the rules of evidence and the constitution, and when any mention of the polygraph can be redacted without prejudicing the defendant or confusing the jury." Regarding the sketch of appellant's hand, appellant argues the sketch is not relevant because the traced hand with a line on one finger, standing alone, does not constitute an admission that appellant sexually assaulted A.C. Further, appellant argues the face of the sketch does not indicate that appellant received and understood Park's instructions and intended the drawing to be an assertion or admission of guilt. . . .

> We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016). A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement. *Id.* at 83. Before a reviewing court may reverse the trial court's decision, it must find the trial court's ruling was so clearly wrong as to live outside the zone within which reasonable people might disagree. *Id.* The results of a polygraph test are inadmissible for all purposes. *Nethery v. State*, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985). Statements made during a polygraph pretest interview, during the polygraph examination itself, or during an interview after the examination may be admissible evidence, but the proper procedure for introducing such evidence before the jury is to redact from such evidence all references to the polygraph examination. *Wright v. State*, 154 S.W.3d 235, 239 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Hoppes v. State*, 725 S.W.2d 532, 536 (Tex. App.—Houston [1st Dist.] 1987, no pet.)).

> *Here, appellant never disputed the voluntariness of his statements to Park.* All references to a polygraph examination were redacted, and Park testified regarding appellant's verbal statements and hand drawing. Park's testimony established that appellant made the hand drawing. In context, this evidence was relevant to show appellant's commission of the charged offenses. Citing Wright and Hoppes, appellant attempts to impose a "reliability" requirement on statements made surrounding a polygraph, which appellant claims requires a showing that either statements were audio or video recorded or were undisputed by a defendant. However, Wright and Hoppes impose no such requirement. *See Wright*, 154 S.W.3d at 239; Hoppes, 725 S.W.2d at 536.

*Ortega*, No. 05-17-00810-CR, 2018 WL 3322893, at *2 (Dkt. #13-3, pp. 4-5) (emphasis added).

In his state habeas application, Petitioner argued trial counsel provided ineffective assistance by failing to object to the admission of Park's testimony on the basis that Petitioner's statements to Park were not made voluntarily, but due to deceit by Park. In his affidavit submitted in response, trial counsel addressed the issue as follows:

10.    Counsel's strategy was to point out the logical and logistical inconsistencies surrounding the allegations and to prevent Michael Park from testifying. If Park were to testify, counsel was going to build a record for appeal. In defense's case our strategy was to establish the logistical problems with the timing of the allegations and to develop the motivation for the complaining witness to lie, with an emphasis on desire to move out of her mother's home and in with her father, additionally emphasizing her avoiding discipline for sneaking out of the house to see her older boyfriends.

11.    Defense strategy was discussed with Applicant.

12.    Applicant took two polygraphs in this case.

13.    Applicant took the polygraphs in this case before counsel was retained in order to "clear his name."

14.    The drawing is a sketch of Applicant's hand with a line drawn on his middle finger.

15.    Counsel objected to Michael Park testifying about the drawing.

        a.    On Confrontation grounds, 403 grounds (confusion of jury), and on the grounds that polygraphs are unreliable and inadmissible.

17

      b.      The objections were made pretrial and in trial. A limine order was procured before trial.

16.     Yes, counsel argued that the statement written . . . on the bottom of the drawing was made after Applicant made the drawing.

17.     Counsel asked Park about the timing of the drawing and the statement during cross-examination.

18.     Counsel called Skip Ensley to testify at trial.

19.     Counsel's strategy for calling Ensley to testify was to impeach Park's credibility.

20.     Counsel sought to have Ensley testify to Park's bad reputation in the polygraph examiner community, the recognized practice of polygraph examiners to record examinations, the several complaints against Park, the fact that Park was under investigation, and the fact that there was a civil suit against Park for his practices.

21.     Counsel was only permitted to ask about Park's bad reputation in the polygraph examiner community and the recognized practices of recording the evaluations in that community. However, we could not reveal that the community in question was the community of polygraph examiners.

22.     Ensley testified about how Bill Parker, Rick [H]olden, Greg Miller, and Tom Morgan would also say that Park has a reputation for being deceitful.

23.     Counsel cannot recall whether we spoke with Bill Parker, Rick Holden, Greg Miller and Tom Morgan. We did reach out to several of the polygraph examiners Ensley discussed with us but counsel cannot recall which ones we were actually able to speak with. We did not call the other polygraph examiners because we either could not reach them or they required an expert witness fee. Additionally, counsel believed that their testimony would be cumulative with that of Ensley.

24.     Ensley testified about the complaints raised against Park outside the presence of the Jury but was not permitted to address the complaints in front of the jury.

25.     Yes, counsel wanted to ask those questions [regarding complaints against Park] but the trial court would not allow it.

(Dkt. #13-22, pp. 106-08).

After finding trial counsel and his affidavit credible (Dkt. #13-22, p. 123, ¶¶ 1-2), the state habeas court issued the following findings and conclusions concerning Petitioner's claim:

3.  In a hearing outside the presence of the jury before trial, the trial court addressed the issue of the admissibility of Applicant's statements to a polygraph examiner, Michael D. Park;

4.  Trial counsel made a Rule 403 objection and argued that admission of Applicant's statements to Park would confuse the issues before the jury because the jury would not have the context of the statements being made to a polygraph examiner. *Ortega v. State*, No. 05-17-00810-CR, 2018 WL 3322893, at *1 (Tex. App.—Dallas July 6, 2018, pet. ref d) (not designated for publication);

5.  Trial counsel also objected that he would not be able to effectively cross-examine Park because he would not be able to mention the polygraph. *Id.*;

6.  The trial court ruled that the statements Applicant made "while he was not hooked up to a polygraph machine" were admissible, but the trial court ordered any polygraph results to be redacted and ordered the parties to tell their witnesses not to say the word "polygraph" or "lie detector" or allude to the fact that there was a polygraph. *Id.*;

7.  Applicant told "Park he accidentally touched her and his fingers went into her vagina while they were roughhousing." *Id.*;

8.  Park asked Applicant to draw his hand on a piece of paper and to draw a line, however much or however little, that Applicant placed his finger in A.C.'s vagina. *Id.*;

9.  Applicant drew his hand and a line across a finger and said, "The only thing I can say is not sexual, just horseplay. She was always all over me." *Id.*;

10  The drawing and Park's handwritten note regarding what the drawing depicted were entered into evidence. *Id.*;

11. Park testified he wrote a report following his meeting with Applicant and referred the matter to the police. *Id.*;

12. In another hearing outside the presence of the jury, polygraph examiner A.D. Skip Ensley testified Park is "not trusted in the [polygraph] community." Ensley testified there were "several complaints filed against" Park, Park's "method of how he conducts his exams is always under question," and Park has a reputation for being deceitful. *Id.* at *3;

13.    In response to questioning from the prosecutor, Ensley testified he had never worked with Park, Ensley had "no idea" whether any of the complaints against Park had been sustained, and his opinion about Park being deceitful was based on what other people had told him. *Id.*;

14.    In response to questioning, Ensley testified that licensed polygraph examiners were required to report anyone who admitted that they committed a sexual assault. *Id.*;

15.    At the conclusion of the hearing, the trial judge ruled that Ensley could testify regarding Park's reputation for truthfulness and honesty and regarding whether it is standard practice in his occupation to make audio and video recordings. *Id.*;

16.    With the jury present, Ensley testified he was part of the same community as Park, and Park's reputation for truthfulness in the community was "very questionable." *Id.*;

17.    Trial counsel's strategy in this case was to point out the logical inconsistencies surrounding the allegations by establishing logistical problems with the timing of the allegations, developing the victim's motive to fabricate by emphasizing her desire to move out of her mother's house, and to show her desire to avoid discipline for sneaking out of the house to meet her boyfriend;

18.    Counsel's strategy was also to prevent Michael Park from testifying and if he was going to testify, trial counsel wanted to build a record for appeal;

19.    Applicant argues that trial counsel was ineffective because he did not object to the admission of Park's testimony on the grounds that Applicant's statements to Park were not made voluntarily, but due to deceit by Park;

20.    Applicant took two polygraph tests before counsel was retained in an effort to "clear his name";

21.    Counsel objected to Park testifying about the drawing of Applicant's ha[n]d with a line drawn on his middle finger on Confrontation grounds, 403 grounds, deception, and due process, and received a running objection to Park's testimony regarding Applicant's statement to him. 2 RR 11-15, 48-57; 3 RR 125-33, 138;

22.    Counsel argued that the statement written at the bottom of the drawing was made after Applicant made the drawing and counsel asked Park about the timing of the statement during cross-examination. 3 RR 146-47.

23.     The trial court's rulings regarding the admissibility of this evidence was discussed on direct appeal. *Ortega*, 2018 WL 3322893, at *2.

24.     Counsel did object to the admission of Park's testimony;

25.     Applicant has failed to prove by a preponderance of the evidence that counsel was deficient;

26.     Applicant has failed to prove by a preponderance of the evidence that the outcome of trial would have been different had counsel made objections he did [not] make[.]

(Dkt. #13-22, pp. 123-27). Although the state habeas court did not expressly cite *Strickland*, its analysis is consistent with the *Strickland* standards. The TCCA subsequently denied relief without a written order based on the findings of the state habeas court and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. There is no indication Petitioner's statements to Park were the result of deception or trickery by Park such that the statements were involuntary. *See Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997) (holding trickery or deception may render a statement involuntary if "the method was calculated to produce an untruthful confession or was offensive to due process"). The record demonstrates Petitioner took the polygraph test voluntarily before he was arrested or in custody in an effort to show he had not committed the crime; the State had no involvement in selecting the polygraph examiner; and the polygraph examiner was not associated with any law enforcement agency or State agencies when he performed the polygraph. Trial counsel's decision not to make an objection to Petitioner's statements as involuntary was reasonable, and trial

counsel's performance was constitutionally adequate. *See Emery*, 139 F.3d at 198 (a futile or meritless objection cannot be grounds for a finding of deficient performance). Furthermore, trial counsel attacked Park's credibility by presenting Ensley's testimony "that Park's reputation for truthfulness in the community was 'very questionable' and that, in the community, members were 'supposed to audio or video record the evaluations' they performed." *Ortega*, No. 05-17-00810-CR, 2018 WL 3322893, at *3 (Dkt. #13-3, p. 6). Thus, trial counsel presented the jury with evidence calling into question the validity of Petitioner's statements to Park. Petitioner fails to overcome the presumption that trial counsel's strategy of challenging Petitioner's statements through an attack on Park's credibility was reasonable.

Even assuming, however, the trial court would have granted an objection to Petitioner's statements as involuntary and excluded Park's testimony as to Petitioner's statements as well as the drawing, the victim's testimony alone was sufficient to support Petitioner's conviction. *See Collmorgen v. Lumpkin*, No. 4:22-CV-1971, 2023 WL 6388551, at *16 (S.D. Tex. Sept. 30, 2023) ("A child sexual assault complainant's uncorroborated testimony, standing alone, is sufficient to support a defendant's conviction.") (citing Tex. Code Crim. Proc. art. 38.07 (stating conviction for sexual assault is supportable on uncorroborated testimony of victim if victim informed any person, other than defendant, of offense within year, but requirement does not apply if at time of alleged offense victim was person seventeen years of age or younger); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App. 2002)). Thus, Petitioner fails to show he was prejudiced by trial counsel's failure to object to Petitioner's statements as involuntary.

Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show

there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Three and the claim should be denied.

### c. *Failure to object to testimony regarding police report (Ground Four)*

In Ground Four, Petitioner argues trial counsel provided ineffective assistance by failing to object to testimony regarding a police report that was not given by the author of the report. (Dkt. #1, pp. 8, 9).

Detective Kristina McClain testified for the State at trial. During cross-examination of Detective McClain, trial counsel asked if she was aware of a police report filed by Petitioner in March 2016. (Dkt. #13-9, p. 84). Detective McClain stated she was aware of the report, but that was not how the instant case was brought to her attention. (Dkt. #13-9, p. 84). Later, on redirect, the State asked Detective McClain about the report made in March 2016, and after referring to the report, Detective McClain testified Petitioner had reported that the victim's mother was making harassing phone calls to him and threatening to kill him because of the allegations raised by the victim. (Dkt. #13-9, pp. 91-92).

In his state habeas application, Petitioner argued trial counsel provided ineffective assistance by failing to object to this testimony. When trial counsel addressed the issue in his affidavit, he mistakenly referred to a different police report. (Dkt. #13-22, p. 108). As such, trial counsel's response will not be discussed.

After finding trial counsel and his affidavit credible (Dkt. #13-22, p. 123, ¶¶ 1-2), the state habeas court issued the following findings and conclusions concerning Petitioner's claim:

> 43.    Applicant argues that trial counsel was ineffective for failing to object to Detective Kristina McClain's reference to a police report that she had not written that indicated that the victim's mother wanted to kill Applicant because he committed the sexual crimes against her daughter;

44.    During cross-examination of Detective McClain, trial counsel asked if she was aware of a police report brought by Applicant in March 2016. Detective McClain indicated that she was aware, but that was not how the instant case was brought to her attention. 3 RR 84. Later, on redirect, the State asked Detective McClain about the report made in March 2016, and after referring to the report, Detective McClain testified that Applicant had reported that the victim's mother was making harassing phone calls to him, threatening to kill him because of the allegations raised by the victim. 3 RR 91-92.

45.    In his affidavit, counsel refers not to the police report about the harassing phone calls, but regarding the police report that indicated that the victim's mother was under investigation for theft;

46.    Nevertheless, Applicant has failed to show that counsel was ineffective for not objecting to the police report;

47.    The police report only showed that the victim's mother had made threatening calls to Applicant in March of 2016. 3 RR 92.

48.    Counsel used the timing of that report to show that the family knew of the allegations in March 2016, but the case was not reported until April 2016, and even then was not reported by the family. 3 RR 84, 93.

49.    The March 2016 police report helped the defensive strategy of establishing logistical problems with the timing of the allegations;

50.    Applicant has failed to establish by a preponderance of the evidence that trial counsel was deficient for not objecting to evidence that was beneficial to a defensive strategy; and

51.    Applicant has failed to establish by a preponderance of the evidence that the outcome of the trial would have been different had counsel objected to this beneficial evidence.

(Dkt. #13-22, pp. 129-31). Although the state habeas court did not expressly cite *Strickland*, its analysis is consistent with the *Strickland* standards. The TCCA subsequently denied relief without a written order based on the findings of the state habeas court and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing evidence. Petitioner fails to overcome the presumption trial counsel had a valid legal strategy for not objecting to McClain's testimony, or eliciting testimony, about the March 2016 police report. The testimony aligned with the defense theory that there were timing and logistical issues surrounding the victim's allegations—namely, although the victim's family knew of the sexual abuse allegations against Petitioner in March 2016, the case was not reported until April 2016, and even then, Park reported the allegations, not a family member. Petitioner fails to demonstrate McClain's testimony harmed his defense, and therefore, fails to establish he was prejudiced by trial counsel's performance. Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Four and the claim should be denied.

### 2. Failure to Investigate (Ground Five)

In Ground Five, Petitioner contends trial counsel provided ineffective assistance by failing to investigate. (Dkt. #1, p. 10). Specifically, Petitioner asserts trial counsel did not investigate the complaints or pending civil suit against Park and should have called other polygraph examiners as witnesses to testify at trial about Park's deceitfulness. (Dkt. #1, p. 10).

The duty of defense counsel to investigate is set forth in *Strickland*:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment support the limitations on investigation. In other

> words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91. "This duty to investigate and prepare is, however, far from limitless, and not every breach thereof will mean that counsel has failed to render reasonably effective assistance. '(C)ounsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers.'" *Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981) (citation omitted). To establish an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the proceeding. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Additionally, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). Further, the presentation of witness testimony is essentially strategy and, thus, within the trial counsel's domain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). A habeas petitioner must overcome a strong presumption counsel's decision in not calling a particular witness was a strategic one. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). In cases where "the only evidence of a missing witness's testimony is from the defendant," claims of ineffective assistance of counsel are viewed with great caution. *See United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984). "In order for the [petitioner] to demonstrate the requisite *Strickland* prejudice, the [petitioner] must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."

26

*Alexander*, 775 F.2d at 602 (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981)); *see also*

*Gomez v. McKaskle*, 734 F.2d 1107,1109-10 (5th Cir. 1984) (the petitioner failed to meet his

burden of showing uncalled witnesses would have testified favorably to the petitioner's case).

In his affidavit submitted in the state habeas court, trial counsel addressed Petitioner's

failure to investigate claim as follows:

> Counsel cannot recall whether we spoke with Bill Parker, Rick Holden, Greg Miller and Tom Morgan. We did reach out to several of the polygraph examiners Ensley discussed with us but counsel cannot recall which ones we were actually able to speak with. We did not call the other polygraph examiners because we either could not reach them or they required an expert witness fee. Additionally, counsel believed that their testimony would be cumulative with that of Ensley.

(Dkt. #13-22, p. 107, ¶ 23).

After finding trial counsel and his affidavit credible (Dkt. #13-22, p. 123, ¶¶ 1-2), the state

habeas court issued the following findings and conclusions concerning Petitioner's claim:

> 27.    Applicant argues that trial counsel was ineffective because he did not investigate complaints that had been filed against Park;

> 28.    Counsel called Ensley to testify;

> 29.    Counsel wanted to show that Park had a bad reputation in the polygraph-examiner community, that there were complaints against Park, Park was under investigation, and that there was a civil suit against Park;

> 30.    Counsel did investigate Park;

> 31.    To the extent that Applicant complains that there was more investigation to be done, Applicant has failed to allege what the additional investigation should have been and what such an investigation would have revealed;

> 32.    Applicant has failed to meet his burden of proof by a preponderance of the evidence that counsel was deficient for not investigating complaints made against Park;

> 33.    Applicant has failed to meet his burden of proof by a preponderance of the evidence that that the outcome of trial would have been different had counsel conducted more of an investigation;

34.    Applicant argues that counsel was ineffective because he did not call more witnesses to support his claims against Park;

35.    During the hearing held outside the presence of the jury, Ensley testified that he spoke with Bill Parker, Rick Holden, Greg Miller, and Tom Morgan and that they would also say that Park had a reputation for being deceitful. 4 RR 70;

36.    Applicant now claims that counsel was ineffective because he made no effort to interview these men or to have them testify;

37.    Counsel cannot recall if he spoke with Parker, Holden, Miller, or Morgan;

38.    Counsel did reach out to several of the polygraph examiners that Ensley discussed but cannot recall which ones he spoke with;

39.    Counsel chose not to call the other polygraph examiners because either (1) he could not reach them or (2) they required an expert witness fee. Id. Counsel also believed that their testimony would be cumulative of Ensley's;

40.    Applicant has not shown that Parker, Holden, Miller, or Morgan were available to testify and or what their testimony would have been;

41.    Applicant has failed to establish by a preponderance of the evidence that counsel's investigation was deficient;

42.    Applicant has failed to establish by a preponderance of the evidence that the outcome of trial would have been different had counsel called any of these witnesses to testify[.]

(Dkt. #13-22, pp. 127-29). Although the state habeas court did not expressly cite *Strickland*, its analysis is consistent with the *Strickland* standards. The TCCA subsequently denied relief without a written order based on the findings of the state habeas court and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

A review of the record fails to show the state court's determination of this issue was in conflict with established federal law or was objectively unreasonable, and nothing in the record rebuts the presumption of factual correctness of the state court's findings with clear and convincing

evidence. The record demonstrates trial counsel conducted a reasonable investigation into Park. Indeed, trial counsel called Ensley as a witness, who testified he was part of the same community as Park, and Park's reputation for truthfulness in the community was "very questionable." (Dkt. #13-10 p. 102). Petitioner has not provided an affidavit from the other polygraph examiners indicating they would have been willing to testify at Petitioner's trial or what their testimony would have been. Furthermore, their purported testimony would have been cumulative of Ensley's testimony. Under these circumstances, trial counsel's decision not to further investigate or call the other polygraph examiners as witnesses at trial was reasonable. There is no basis other than speculation to support Petitioner's argument that the outcome of the trial would have been different had trial counsel called the other polygraph examiners to testify. Having not shown deficient performance or prejudice, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner is not entitled to habeas relief on Ground Five and the claim should be denied.

## V. CONCLUSION

Petitioner has failed to show his claims have merit. Specifically, Petitioner has failed to demonstrate section 21.02(d) of the Texas Penal Code violates a defendant's constitutional right to a unanimous jury verdict. Petitioner also has failed to demonstrate trial counsel rendered ineffective assistance under *Strickland*. Above all, Petitioner has failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v.*

*Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). Nor has Petitioner shown there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, jurists of reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right and jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is recommended reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended the Court find Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended the above-styled petition filed under 28 U.S.C. § 2254 be denied and the case be dismissed with prejudice. It is further recommended a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days)

**So ORDERED and SIGNED this 13th day of December, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE